UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x           Chapter 11
In re:                                                              Case No. 8-09-72305-ast
Raymond Viola                                             **THIRD AMENDED DISCLOSURE
                                                               STATEMENT**


                                                    Debtor.
--------------------------------------------------------x

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A
DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY
COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL
BUT HAS NOT BEEN APPROVED BY THE COURT.**

ZINKER& HERZBERG, LLP
Attorneys for Debtor
278 East Main Street,
POB 866
Smithtown, NY 11787-0866
631-265-2133

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re:

Raymond Viola

Chapter 11
Case No. 09-72305-ast

**THIRD  AMENDED
DISCLOSURE STATEMENT**

Debtor.

---------------------------------------------------------x

   Raymond Viola, Debtor and Debtor-In-Possession ("Viola" and/or "Debtor") submits this

Third Amended Disclosure Statement (the "Disclosure Statement") pursuant to Section 1125 (b)

of the Bankruptcy Code ("Code") to all known holders of a claim or interest in order to disclose

adequate information deemed to be material, important and necessary for the creditors to make

an informed judgment about the Debtor's Third Amended Plan of Reorganization (the "Plan")

dated November 11, 2010 (the "Plan") and to arrive at an informed decision in exercising their

right to vote on the Plan presently on file with the Bankruptcy Court.

   Accompanying this Disclosure Statement are copies of the following documents:

   1.  The Plan;

    2.  The Notice Fixing time for Filing of Acceptances or Rejections of the Plan,

for the Hearing on Confirmation of the Plan ("Hearing or Hearing on the Plan"); and

   3.  The Ballot for the acceptance or rejection of the Plan ("Ballot").

   The Bankruptcy Court has scheduled the Hearing on Confirmation of the Plan for

 December 15, 2010 at 9:30 a.m. in courtroom 960 at the United States Bankruptcy Court, LI

Federal Courthouse, Central Islip, New York. The creditors and the holders of other interests

may vote on the Plan by completing and mailing, faxing or e-mailing the enclosed Ballot so that

the same is received by Zinker & Herzberg, LLP, attorneys for the Debtor, at POB 866,

Smithtown, NY 11787-0866 by mail, facsimile (fax number 631-265-4233) or e-mail (e-mail

address mail@zandhlaw.com) on or before 4:00 p.m,. December 10, 2010.

    Objections to confirmation of the Plan, if any, must be in writing in the form

prescribed by the Federal Rules of Bankruptcy Procedure and must be filed with the Court in

accordance with  the Court's Rules for Electronic Case Filing which may be found on the

website of the Court at www.nyeb.uscourts.gov, together with a chambers copy with the Clerk of the Bankruptcy Court at 290 Federal Plaza, POB 9013, Central Islip, NY 11722, and also served upon Zinker & Herzberg, LLP, attorneys for the Debtor, at POB 866, Smithtown, NY 11787-0866, The Office of the United States Trustee, 560 Federal Plaza, Central Islip, NY 11722, and upon all other parties having filed a notice of appearance, on or before December 10, 2010.

Confirmation of the Plan cannot occur until this Disclosure Statement is approved by the Court and necessary creditor acceptances are obtained. Under the Bankruptcy Code, the Debtor is permitted to modify the Plan before and, with the Court's approval, after confirmation of the Plan. It is anticipated that there will not be any material modifications to the Plan before it is submitted to creditors.

As a creditor, your vote on the Plan is important. The Plan will be determined to have been approved and confirmed by the Bankruptcy Court if at least two-thirds (2/3) in amount and more than one half (1/2) in number of allowed Claims of each Class of creditors whose Claims are impaired under the Plan and who vote for the acceptance of the Plan.

**If necessary, the Debtor will seek confirmation of his Plan pursuant to §1129(a)(10)which permits confirmation "if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." §1129(b)(1 ) provides further that the Plan may be confirmed "... if all of the applicable requirements of this section other than paragraph (8) are met with respect to a plan, the court, on request of a proponent of the plan shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan."**

Impairment means any class of creditors whose legal, equitable or contractual rights are to be adversely affected by the Plan. A full definition of impairment is contained in Section 1124 of the Bankruptcy Code.

The definitions and designations of terms, names, and designations of persons, or entities, made in the Plan, apply to the Disclosure Statement, and it is suggested that you refer to the Plan for such definitions and designations.

**THIS DISCLOSURE STATEMENT IS THE ONLY AUTHORIZED STATEMENT WITH RESPECT TO THE PLAN. NO OTHER REPRESENTATIONS CONCERNING THE DEBTOR, ITS OPERATIONS OR THE VALUE OF ITS PROPERTY HAS BEEN AUTHORIZED BY THE DEBTOR. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN OR INCONSISTENT WITH THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

## INTRODUCTION

On April 6, 2009, the Debtor filed a voluntary petition for relief under Title 11, Chapter 11 of the U.S. Code ("Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York. Pursuant to the applicable provisions of the Bankruptcy Code, the Debtor has remained in possession of his assets and after confirmation of his plan he will continue as principal and sole owner/and or managing member of American Pallet Recycling, LLC, ("Pallet"); Viola Realty, LLC ("Realty") and APM Services, Inc. ("APM").

## HISTORY OF THE DEBTOR

The nature of the business for each entity is as follows: Pallet is in the business of repairing and selling recycled and new pallets at 171 East Industry Court, Deer Park, NY. Realty owns and operates the realty located at 171 East Industry Court, Deer Park, NY. Pursuant to a ten (10) year tax abatement program entered into with the Town of Babylon Industrial Development Agency ("IDA") in or about 2004 title was conveyed to IDA until the tax abatement program expires in 2014. In the event Realty seeks to convey the real property prior to the time when the program expires, IDA is entitled to recover the sum of $110,850.00 representing the tax abatement received to date from Realty together with such other and further tax abatement if the sale is conducted prior to the expiration of the ten (10) year tax program. APM is engaged in the business of the distribution of packaging supplies and operates out of 171 East Industry Court, Deer Park, NY. The Debtor is principal and sole owner/and or managing member of Pallet, Realty and APM..

On May 15, 2007, the Debtor filed a Case pursuant to Chapter 13 of the Bankruptcy Code to prevent the foreclosure of his home located at 88 Idaho Street, Lindenhurst,

NY (the "Real Property") by Banco Popular NA. His Chapter 13 Plan payments were in the amount of approximately $4,000.00 per month, for a period of 60 months.

The Debtor's source of income is derived from Pallet. The Debtor is the managing member of Pallet, Realty and APM and holder of the issued and outstanding units of members certificates. The Debtor has pledged his member certificates in Pallet as collateral security for the loan owed by Pallet to Triad Capital Corp. ("Triad") which is owed approximately $257,250.00 as of the Petition Date.

Pallet is a minority owned business which qualified for the minority loan program (the "Program") administered by The Business Consortium Fund ("BCF"). Pursuant to the Program, Pallet does business with various Fortune 500 companies which are members of BCF such as Coca Cola, Wendy's, Pepsi Cola and Illinois Tool Works. Pallet sells, repairs and recycles pallets for its customers. Pallet does not have any binding contractual agreements with its customers, which purchase either new or reconditioned pallets from Pallet. In addition Pallet discards those pallets incapable of being reconditioned, although if possible it recycles usable wood in constructing used  pallets for sale. Pallet fulfills orders as received from its customers which as indicated are not contractually obligated to continue doing business with Pallet.

The Program is limited to minority owned businesses such as Pallet and taken together with the absence of any long term contractual obligations has an adverse effect upon the ability to sell Pallet as a going concern and consequently limits its value. It should be noted that any successor to Pallet must qualify upon its own merits for the Program, and then such successor is not guaranteed the ability to conduct business with Pallet's current customers.

 However, due to the economic downturn, the Debtor was financially unable to continue making the required monthly payments and his Chapter 13 Case was dismissed on December 30, 2008. Thereafter and on April 6, 2009 this Chapter 11 Case was commenced and as a condition of extending the automatic stay pursuant to 11 U.S.C. §362 the Debtor was directed to make monthly adequate protection payments of $2,000.00 to Banco Popular, NA to continue the

automatic stay in effect and thereby preventing Banco Popular, NA from obtaining permission from the Bankruptcy Court to proceed with its foreclosure action.

Chapter 11 Events

As indicated the Debtor's main purpose in filing its Chapter 11 case was to preserve his home where he resides with his cancer stricken wife, his blind 85 year old father, his 88 year old mother-in-law and three of his children.

## ANALYSIS OF THE PLAN

The Plan dated November 11, 2010 was filed with the U. S. Bankruptcy Court.

The Plan divides creditors and parties in interest into the following nine classes:

**Class I.** Consists of Banco Popular, NA ("Banco") which is the holder of the senior lien against the Debtor's Real Property. This Class will retain its lien upon the Debtor's Real Property and will be paid in full at the rate of $2,000.00 per month inclusive of 6% interest per annum, for a period of fifteen (15) years until fully satisfied. It is estimated that this Class is owed approximately $170,000.00, which sum should be reduced based upon the adequate protection payments the Debtor has made during the pendency of this Chapter 11 Case which in turn should reduce the time period over which this Class will be paid. This Class is impaired.

**Class II.** Consists of HSBC Bank which is secured by a second mortgage in the nature of a home equity loan against the Debtor's Real Property upon which there was due the sum of $6,339.77 as of the Commencement Date. The current balance of $7,724.99 shall be paid monthly in the amount of $60.00, which sum includes interest of 4.25% per annum, over twenty (20) years. The original term of the loan was for thirty (30) years commencing in 2002. This Class will retain its lien upon the Debtor's Real Property. This Class is impaired as the Debtor has not made any payments during this Case.

**Class III.** Consists of the Small Business Administration ("SBA") which made a business loan to Pallet which owes the sum of $109,985.53 as of the Commencement Date and is secured by a third mortgage upon the Debtor's Real Property as well as a security interest

against the assets of Pallet . This lien is collateral security for the debt owed to the SBA by Pallet which is paying the debt pursuant to the terms of the loan which originated in 2002 and is for a period of 28 years, 9 months at 4% interest per annum payable at the rate of $610.00 monthly. In the event Pallet defaults, the Debtor will make the required payments This Class will retain its lien upon the Debtor's Real Property. Pallet which is current with its payments to SBA will continue to make the required monthly payment. In the event Pallet fails to make the required monthly payment of $610.00, the Debtor will make the monthly payment. SBA is owed approximately $109,000.00. This Class is unimpaired.  There are no arrears owed to this Class.

   **Class IV.** Consists of Bank of America ("BOA") which is secured by a fourth mortgage given in 2005 upon the Debtor's Real Property in the original sum of $265,000.00, payable over twenty (20) years at 4% per annum. Currently, $119,155.19 is secured and the balance of $145,844.81 is a general unsecured claim. The Debtor is seeking a modification of the mortgage held by BOA upon his Real Property. All arrears will be incorporated into the mortgage balance and the Debtor will repay the secured portion of the claim over the remaining fifteen (15) years of the term at 4% interest per annum. The remaining unsecured balance of the claim will be treated as a Class V general unsecured creditor. It is estimated that monthly payments will be approximately $600.00. This Class is impaired.

   **Class V**. Consists of all general unsecured claims, and is comprised of all general unsecured claims which have been allowed herein and not subject to objection. This Class with the exception of Business Consortium Fund (BCF") and Triad Capital Corp. ("Triad") is estimated to be paid a total distribution of $28,500.00  which is not less than the Debtor's projected disposable income (as defined in section 11 U.S.C. §1325 (b)(2) of the Bankruptcy Code)  to be received by him during the 5-year period beginning on the date that the first payment is due under the Plan to such liquidated claims that have been allowed pursuant to the provisions of Section 502 of the Bankruptcy Code.  The Debtor will commence distribution 30 days from confirmation and continue distribution on each succeeding ninety (90) day interval

for a period of five (5) years in accordance with 11 U.S.C. §1129(a)(15)(B).

In the alternative and in the event the Debtor is able to raise the sum of $28,500.00 which amount meets the requirement of 11 U.S.C. §1129(a)(15)(B), the Debtor intends to satisfy his obligation to this Class in cash thirty days after confirmation without any prepayment penalty.

This Class includes both BCF and Triad which are secured creditors of Pallet with liens upon its assets. BCF was owed the sum of $117,316.53 by Pallet as of the Petition Date, and Triad was owed approximately $257,250.00 as of the Petition Date. BCF's and Triad's respective claims are guaranteed by the Debtor and accordingly are contingent unsecured claims against the Debtor. Pallet expects to resolve the respective sums owed to BCF and Triad. However in the event Pallet defaults, BCF and Triad will be treated within this Class of unsecured creditors.

The Debtor estimates that his quarterly payments will be approximately $1,500.00 exclusive of payment to BCF and Triad**.** Unsecured claims total approximately $814,665.20 exclusive of BCF and Triad. The Debtor estimates that creditors in this Class will receive approximately 3.5% upon their respective claims (without payments being made to BCF or Triad until such time as their respective contingent unsecured claims have been liquidated). This class is impaired.

## ADMINISTRATION EXPENSES

The term "Administration Expenses" is defined in Article I, section 1.01 of the Plan. The treatment accorded to allowed Administration Expense claims is set forth in Article III, section 3.01 of the Plan. In summary, the only known Administration Expense claim is that of Zinker & Herzberg, LLP, counsel to the Debtor which firm is owed approximately $25,000.00. Payment will be made upon such terms as agreed upon by the Debtor and counsel as approved by the Court.

## EXECUTORY CONTRACTS

The Debtor does not have any executory contracts.

## PREFERENTIAL TRANSFERS

Upon discussions with the Debtor it has been determined that there are no existing preferential transfers to be recovered by the Debtor's estate.

## FRAUDULENT TRANSFERS

Upon discussions with the Debtor it has been determined that there are no existing fraudulent transfers to be set aside.

## MEANS OF EXECUTION OF THE PLAN

In the event the Debtor is unable to raise the funds required to make the proposed lump sum payment to Class V creditors, the Debtor shall utilize his income derived from Pallet for distribution to both secured and unsecured creditors as provided for in his Plan.

Until such time as the respective unliquidated unsecured claims of BCF and Triad (see Class V) are liquidated and the Debtor is required to make payment upon their respective claims, the Debtor will create an account into which he will deposit the sum of $656.00 quarterly, representing the prospective quarterly payments to be made pursuant to the Plan.

## POST PETITION OPERATIONS AND MANAGEMENT

The Debtor intends to continue to be the owner and/or sole stockholder or managing member of his business interests.

## RETENTION OF JURISDICTION

The Second Amended Plan ("Amended Plan") provides that until all payments required to be made pursuant to this Amended Plan have been paid, and a Final Decree is entered, the Bankruptcy Court shall retain jurisdiction of this proceeding for the following purposes: (1) to consider any modifications of this Plan pursuant to Section 1127 of the Bankruptcy Code; (2) to hear and determine all controversies, suits, and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan; (3) to hear and determine any and all requests for

compensation and/or reimbursement or expenses, if any, which may be made after confirmation of the Plan; (4) to hear and determine all of the controversies, suits, and disputes, if any, that may be pending at the time of confirmation of the Plan, or that may arise between the Debtor and holders of claims and interests.

**THE FOREGOING SECTION SIMPLY PRESENTS A SUMMARY OF THE PLAN OF REORGANIZATION AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. CREDITORS ARE URGED TO READ THE PLAN IN FULL. CREDITORS ARE FURTHER URGED TO CONSULT WITH COUNSEL AND WITH EACH OTHER IN ORDER TO FULLY UNDERSTAND THE PLAN. THE PLAN IS COMPLEX AS IT REPRESENTS A PROPOSED LEGALLY BINDING DOCUMENT BY THE DEBTOR AND AN INFORMED JUDGMENT CONCERNING THE PLAN CANNOT BE MADE WITHOUT UNDERSTANDING ITS RAMIFICATIONS.**

The Debtor believes that the acceptance of its Plan is in the best interests of the Debtor and its creditors and provides the greatest realization of value from the assets of the Debtor.

Annexed are the following exhibits:

a) Cash flow projection for June, 2010 through December, 2015 of the Debtor and his business interests.

b) Balance sheets and liquidation analysis of Debtor's business entities.

**c)** Operating reports, without bank statements, for the most recent three month period.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

# RAYMOND VIOLA
## BALANCE SHEET-LIQUIDATION ANALYSIS

**as at May 31, 2010**

| ASSETS | Book Value | Liquidation value |
|---|---|---|
| Cash on hand | $ 100.00 | $ 100.00[1] |
| Deposits | 100.00 | 600.00[2] |
| Real Property | 420,000.00 | -0-[3] |
| Motor Vehicle-1997 Camry XLE | 2,000.00 | 2,000.00[4] |
| Life insurance | 4,000.00 | |
| | | -0- [5] |
| Stock/Business interests | -0-. | -0-[6] |
| Household goods and furnishings | 7,500.00 | -0-[7] |
| Wearing Apparel | 1,500.00 | -0-[8] |
| | | |
| **TOTAL ASSETS** | $ 435,200.00 | $ 2,700.00 |

| LIABILITIES | | Amount due |
|---|---|---|
| Administration Liabilities: | | |
|     U.S. Trustee fees | 1,000.00 [9] | |
|     Professional fees | 20,000.00 [10] | |
| **TOTAL ADMINISTRATION LIABILITIES** | | $   21,000.00 |
| Pre Chapter 11 Priority Liabilities: | | -0- |
| **TOTAL PRIORITY LIABILITIES** | | -0- |
| **TOTAL LIABILITIES TO BE PAID BEFORE** | | |
| **PAYMENTS TO UNSECURED CREDITORS** | | $   21,000.00 |
| **TOTAL UNSECURED CREDITORS** | | $  814,665.20 |
| **TOTAL AVAILABLE TO UNSECURED CREDITORS** | | -0- |

## CONCLUSION

       It is the Debtor's belief that he has proposed the maximum distribution to be made to all creditors over the shortest period of time.

       This Disclosure Statement was approved by the Bankruptcy Court after notice and a hearing.

       The Bankruptcy Court made its independent determination that the Disclosure Statement contained "adequate information" as defined by §1125 (a) of the Bankruptcy Code. The Debtor asks creditors for their support in approving the Plan.


Dated:  Smithtown, NY               Raymond Viola
         November 11, 2010         Debtor & Debtor-In-Possession

                               /s/
Pursuant to Rule 9011          Raymond Viola
Zinker & Herzberg, LLP.
/s/

By:    Edward Zinker
       Member of Firm

_____

1. This sum will vary from time to time but will not exceed the amount shown.

2. This is the Debtor's DIP account maintained at Suffolk County National Bank and currently has $600.00 on deposit, which sum will vary from time to time..

3. The Debtor owns 88 Idaho Street, Lindenhurst, NY with his wife as tenants by the entirety. As of October 9, 2009, the house was appraised for $420,000.00. The house is subject to secured liens of $420,000.00. It should be noted that several liens were deemed either partially secured or fully unsecured. The total liens of $420,000.00 reflects only the secured liens. The house is subject to the Debtor's homestead exemption of $50,000.00 and his wife's interest as a tenant by the entirety.

4.. The Debtor has claimed an exemption to this vehicle and the Debtor does not believe that there is any equity in this vehicle. The Debtor does not have any interest in any other vehicles.

5. The Debtor has a term life policy with Great Western Life which has no value. In addition, the Debtor has a universal life policy with Union Mutual which has a cash value of approximately $4,000.00. The Debtor has claimed an exemption in the Union Mutual policy.

6. The Debtor is the managing member of Pallet and APM and holder of the certificates. The Debtor has pledged the certificates in Pallet as collateral security for the loan owed to Triad which was owed $257,250.00 as of the Commencement Date. For reasons set forth in the above section under the heading of History of the Debtor, as well as other information pertaining to Realty and APM, the Debtor believes that there is no equity in said entities.

7.  The Debtor's household goods and furnishings are jointly owned with his wife and are subject to his claimed exemption. This asset has no liquidation value.

8. The Debtor's wearing apparel is subject to his claimed exemption and has no value.

9. The Debtor estimates that the fees due to the United States Trustee will not exceed $1,000.00, in the event his case is converted to Chapter 7.

10. These items are estimated. Professional fees are subject to Court approval.